ORFINGER, J.
 

 Dawn Ortolano appeals a final order of the Unemployment Appeals Commission (“UAC”), affirming the decision of an unemployment compensation appeals referee dismissing her administrative appeal as untimely. For the reasons explained below, we reverse and remand for a hearing to determine whether the lateness of Orto-lano’s filing is attributable to the UAC.
 

 Ortolano filed for unemployment compensation benefits on April 27, 2008, after her employment with Dillard Department Stores, Inc. (“Dillard’s”) ended. On May 13, 2008, claims adjudicator S.L. Block issued two notices of determination, one awarded unemployment benefits to Ortola-no, while the other denied benefits.
 
 [1]
 
 Apparently, both parties received only the notice awarding benefits to Ortolano because Dillard’s filed an appeal of the award. The Agency for Workforce Innovation (“the Agency”) filed Dillard’s appeal in the case in which Dillard’s had prevailed, not the one where Ortolano’s claim had been denied. As a result, the Agency, concluding that Dillard’s had not been adversely affected by its perceived denial of benefits, and apparently unaware that it had issued another order awarding benefits to Ortolano upon which both Dillard’s and Ortolano were relying, dismissed Dillard’s appeal.
 

 Understandably confused by these bureaucratic machinations, Ortolano filed her own appeal and the Agency set the matter for hearing before an appeals referee. After making a cursory review of the events, the referee concluded that Ortolano’s appeal was untimely and dismissed it. Orto-lano then sought review before the UAC, which affirmed the earlier order denying benefits, seemingly also unaware of the
 
 *825
 
 existence of the order awarding benefits. Ortolano now seeks review in this Court.
 

 Although there is neither a statutory nor a “good cause” exception to the time limits for appeals to the UAC, there is an exception, based on due process and fairness concerns, when the delay in filing the notice of appeal “was occasioned by the actions of the Commission.”
 
 Pollett v. Fla. Unemployment Appeals Comm’n,
 
 928 So.2d 469, 470 (Fla. 1st DCA 2006) (quoting
 
 Thurman v. Fla. Unemployment Appeals Comm’n,
 
 881 So.2d 89, 91 (Fla. 1st DCA 2004)). Were we the prophesied King of Asia, we might sever this bureaucratic Gordian knot because as it now stands, there apparently exists one order awarding Ortolano benefits and one denying benefits.
 
 [2]
 
 However, because we are unable to do so, we conclude that Ortolano is entitled to a hearing to determine whether the mixed signals that she received from the Agency and the UAC had a bearing on the timeliness of her appeal. The UAC must also sort out the conflict between the two orders.
 
 See Applegate v. Nat’l Health Care Affiliates, Inc.,
 
 667 So.2d 332 (Fla. 1st DCA 1995).
 

 Accordingly, we reverse and remand for further proceedings consistent with this opinion.
 

 REVERSED and REMANDED.
 

 MONACO, C.J., and JACOBUS, J., concur.
 

 [1]
 

 . The confusion may have arisen because the Agency for Workforce Innovation, the body charged with processing unemployment compensation claims, set up two files on Ortola-no's claim.
 

 [2]
 

 . "According to legend, the Gordian knot was an immense and intractable knot affixed to an ox-cart outside the palace of the Phrygian kings in Gordium. Tradition held that whoever could unravel the knot would become 'king of Asia.' In 333 BC, Alexander of Mace-dón and his army wintered in Gordium (in modem Turkey, south of Ankara). The Macedonian king examined the knot and, unable to untie it by hand, severed it with his sword. Proceeding to conquer much of the known Asian world thereafter, he earned the name Alexander the Great. Our aspirations are more mundane.”
 
 Lonaconing Trap Club, Inc. v. Md. Dep't of Env't,
 
 410 Md. 326, 978 A.2d 702, 716 n. 21 (2009).